IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 5, 2008 Session

## DAVID LUKE HARVEY v. DICKSON COUNTY, TENNESSEE, ET AL.

Appeal from the Circuit Court for Dickson County
No. CV 2256     George C. Sexton, Judge

No. M2007-01793-COA-R3-CV - Filed May 21, 2008

An inmate at the Dickson County Jail who was attacked by another inmate filed this action against co-defendants, Dickson County and the Sheriff of Dickson County to recover damages for his personal injuries. The trial court summarily dismissed the complaint against both defendants without stating the legal grounds for its conclusion. The plaintiff contends the defendants breached their duty to prevent foreseeable harm because the defendants left a mop in the jail, which was not secured or locked away, and the defendants knew or should have known that a mop could be used by an inmate as a weapon. Penal institutions have a duty to use reasonable and ordinary care to prevent foreseeable attacks on inmates by other inmates. For a penal institution to be liable for injuries resulting from inmate-on-inmate assaults, the general rule is that the institution must have had prior notice of an attack. The defendants supported their motion for summary judgment with affidavits stating that they had no notice and no reason to believe that the plaintiff was likely to be assaulted. This shifted the burden to the plaintiff to establish that a dispute of fact exists concerning whether the defendants knew of or had reason to anticipate such an attack. The evidence presented by the plaintiff fails to create a dispute of this material fact. Accordingly, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Larry L. Roberts, Nashville, Tennessee, for the appellant, David Luke Harvey.

Mark Nolan and Kathryn Wall Olita, Clarksville, Tennessee, for the appellee, Dickson County, Tennessee, and Tom Wall, in his capacity as Sheriff of Dickson County, Tennessee.

### OPINION

The plaintiff, David Luke Harvey, was incarcerated on April 4, 2006, for contempt of court due to his failure to pay child support. On April 27, 2006, a fellow inmate violently attacked Harvey in the general population area of the Dickson County Jail. The altercation began after Harvey refused to give another inmate a piece of candy. The assault occurred in two waves. First, the

attacker struck Harvey with his fist in the back of the head and then in the mouth. Then, the attacker ran off, only to go to a different area in the jail where cleaning supplies were located, retrieved a mop handle, and returned to repeatedly beat Harvey with the mop handle. Harvey sustained two broken arms, a broken nose, and several lacerations as a result of the attack.

On July 14, 2006, Harvey filed this action against Dickson County and Sheriff Tom Wall, in his capacity as Sheriff of Dickson County. In the Complaint, he alleged, *inter alia*, the defendants were negligent by leaving dangerous instrumentalities – the mop handle – unsecured and in the presence of the general population of the jail. In their respective Answers, the defendants denied being negligent in any manner.

Thereafter, the defendants moved for summary judgment contending the claim against Sheriff Wall should be dismissed as a matter of law because Sheriff Wall, in his official capacity as Sheriff, and the County had immunity. The defendants also contended that the undisputed material facts showed that they had no knowledge or reason to anticipate the attack on Harvey as a matter of law.

The only material fact in dispute is whether the defendants had advance knowledge or warning that the incident was going to occur. In his statement of disputed facts, Harvey insisted that the defendants had "advance warning because the Defendants either knew or should have known that by leaving a broom and/or mop in the pod with unsupervised inmates that the risk of an incident, such as the one between the Plaintiff and [the attacker], was reasonably foreseeable."

The trial court summarily dismissed the Complaint; however, it failed to state the legal grounds upon which it decided the motion as Tenn. R. Civ. P. 56 requires.[1] This appeal followed.

## STANDARD OF REVIEW

The issues were resolved in the trial court upon summary judgment. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993); *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

---

[1] The trial court failed to fulfill its obligations under Tenn. R. Civ. P. 56 as amended in 2007. Rule 56 requires the trial court to state the legal grounds upon which a summary judgment decision is made. In the interest of judicial economy, we decline to remand the case for the trial court to state the legal grounds upon which the summary judgment decision was based.

Summary judgments are proper in virtually all civil cases that can be resolved on the basis of legal issues alone, *Byrd v. Hall*, 847 S.W.2d at 210; *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001); however, they are not appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. The party seeking a summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that party is entitled to judgment as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d at 695. Summary judgment should be granted at the trial court level when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion, which is the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001). The court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, discard all countervailing evidence, and, if there is a dispute as to any material fact or if there is any doubt as to the existence of a material fact, summary judgment cannot be granted. *Byrd v. Hall*, 847 S.W.2d at 210; *EVCO Corp. v. Ross*, 528 S.W.2d 20 (Tenn. 1975). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000).

## ANALYSIS

The dispositive issue in this case is whether the defendants knew or had reason to anticipate the attack on Harvey. The issue of liability arising from inmate-on-inmate assaults is not new to this state. Our courts have repeatedly noted that penal institutions are not insurers of an inmate's safety. *See Gillespie v. Metropolitan Government*, No. 01A01-9109-CV-00317, 1992 WL 9441, at *1 (Tenn. Ct. App. Jan. 24, 1992). The general rule is that the penal institutions merely have a duty to use reasonable and ordinary care to prevent foreseeable attacks on inmates by other inmates. *Id*. A penal institution breaches its duty of care "when the institution's authorities knew of or had reason to anticipate an attack and did not use reasonable care to prevent it." *Id*. (citing *Spann v. State*, 421 So.2d 1090, 1092, 1093 (Dist. Ct. App.1982), *petition for review denied w/o op.*, 430 So.2d 452 (Fla. 1983); *Lexington v. Greenhow*, 451 S.W.2d 424, 425-26 (Ky. Ct. App. 1970); *Parker v. State*, 282 So.2d 483, 486 (La.), *cert. denied*, 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973); *Padgett v. State*, 558 N.Y.S.2d 433, 434 (App. Div.), *app. denied*, 76 N.Y.2d 711, 565 N.E.2d 516, 563 N.Y.S.2d 767 (1990); *Williams v. Adams*, 288 N.C. 501, 504, 219 S.E.2d 198, 200 (1975); *Justice v. Rose*, 102 Ohio App. 482, 144 N.E.2d 303, 304 (1957); *Saunders v. State*, 446 A.2d 748, 751 (R.I. 1982)).

For a penal institution to be liable for injuries resulting from inmate-on-inmate assaults, the general rule is that the institution must have had prior notice of an attack. *Id*. (citing *Harris v. State*, 61 N.J. 585, 297 A.2d 561, 563 (1972)). This principle was reaffirmed in *Hanks v. State*, No. 02A01-9810-BC-00295, 1999 WL 454459, at *3 (Tenn. Ct. App. July 2, 1999), wherein we noted that, generally, there must be some prior notice of an attack for liability to attach.

In *Gillespie v. Metropolitan Government*, an inmate was injured when another inmate struck him with a milk crate. *Gillespie*, 1992 WL 9441, at *1. In affirming the trial court's decision to grant summary judgment to the defendants, we noted that Metropolitan Government's motion for summary judgment was supported by numerous affidavits of correctional officers working at the jail, as well as the deposition testimony of the plaintiff, each of whom stated that at no time prior to the assault had the plaintiff or any other inmate or correctional officer informed the affiant that the attacker posed any threat to the plaintiff's safety. *Id*. at *2. The affiants also stated that the plaintiff had not requested to be removed from the attacker, and the attacker had no history of violent behavior. Moreover, the plaintiff admitted in his deposition that he was never threatened by the other inmate. *Id*. With the plaintiff having failed to provide any proof to create a dispute of fact as to prior notice, we affirmed the summary dismissal based upon the defense of lack of notice.

In *Hanks*, the plaintiff suffered personal injuries when another inmate threw a pan of hot grease on him. *Hanks*, 1999 WL 454459, at *1. As in *Gillespie*, the plaintiff in *Hanks* admitted that he had not notified anyone at the prison of his fear of a potential attack by the attacker. *Id*. at *4. Moreover, there was no proof that the attacker had any disciplinary infractions or other history of assaults during the two years he had been in prison prior the attack on the plaintiff. *Id*. After stating that "[t]he penal institution breaches its duty [to use reasonable and ordinary care to prevent foreseeable attacks on inmates by other inmates] when its authorities know of or have reason to anticipate an attack and do not use reasonable care to prevent it," and that there must generally be some "prior notice of an attack," we concluded that the State had no notice that the attacker "posed any threat of harm to [the plaintiff]," and thus, "the State did not breach its required duty of care." *Hanks*, 1999 WL 454459, at *4. Accordingly, we affirmed the Claims Commission's grant of summary judgment in favor of the State of Tennessee. *Id*.

In a similar case of *Kinningham v. State*, the plaintiff was grabbed by another inmate who suddenly and without warning cut the plaintiff on the arm. *Kinningham v. State*, No. M2001-00495-COA-R3-CV, 2001 WL 1089501, at *1 (Tenn. Ct. App. Sept. 18, 2001). The plaintiff admitted in his deposition that he had no notice of potential harm, and he had no knowledge if the penal officers had any such notice. The claim was summarily dismissed by the Claims Commission. We affirmed the grant of summary judgment because the plaintiff offered no proof that the State had any notice that a fellow inmate posed any threat of harm to the plaintiff. *Id*. at *4.

Turning to the matter at hand, Harvey had been incarcerated for twenty-three days prior to the assault. At no time during these three weeks was Harvey involved in any incidents or altercations with his attacker. In fact, Harvey testified by deposition that he had previously assisted the attacker with proof-reading a letter that the attacker had written to his girlfriend. Harvey further testified that at no time prior to the assault did he believe the attacker posed a threat to his safety, and Harvey had never advised anyone that the attacker posed a threat.[2] Moreover, Harvey never

___

[2]Harvey gave the following testimony at his deposition:
Q: Did you have any warning that Mr. Robertson [the attacker] was going to attack you like that?

(continued...)

-4-

requested to be moved from the area of the jail where the attacker was housed or Harvey was assaulted. Furthermore, there is no proof in the record establishing that the attacker had any violent tendencies or a history of altercations during his imprisonment. The record indicates that the attacker was imprisoned as the result of a drug offense, not a violent act. Moreover, Sheriff Tom Wall testified that he "never had any advance warning that Mr. Robertson, the attacker, would attack Harvey, and to the best of his knowledge, no jail employee had such warning either."

Harvey claims the defendants knew or should have known that cleaning items like the mop could be used as weapons if left in the jail pod for an extended period of time; therefore, the defendants had constructive notice of the dangers that could be caused by leaving such instrumentalities in a jail cell with unsupervised inmates. This, according to Harvey, amounts to a breach of the duty to prevent foreseeable harm to the inmates. We, however, find this argument unpersuasive because the relevant cases, *Gillespie*, *Hanks* and *Kinningham*, focus not on the instrumentalities used in the inmate-on-inmate assaults, but rather, on the previous conduct of the inmates at issue. Each of the instrumentalities used in the assaults in *Gillespie* and *Hanks* – cooking grease and a milk crate – served an essential purpose in the penal institutions.[3] Although each of them could have been secured while not in use, and armed guards could have stood over the inmates as each was being used, the relevant authorities have established that the penal institutions are not required to employ such extraordinary safeguards. Instead, the issue in these cases is whether the penal institution had notice that an inmate posed a threat to assault another inmate, and if so, did the institution use reasonable care to prevent such an assault. *See Hanks*, 1999 WL 454459, at *3.

We have determined that a reasonable person could draw but one conclusion from the facts of this case – that the defendants did not have prior notice of the assault that took place, nor did they have reason to anticipate an assault. We therefore affirm the grant of summary judgment.

---

[2](...continued)
A: No.
Q: Did any deputy jailer or employee of the jail have any warning that Mr. Robertson was going to attack you like that?
A: I - - I don't believe so, no.

[3]Sheriff Tom Wall admitted that, in retrospect, a mop handle could be used as a weapon, but he stated that "[u]p until [Harvey] got hurt - - as far as I can ever remember I never remember anyone being injured with one. I just personally never thought about a mop and a mop handle, you know."

**IN CONCLUSION**

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, David Luke Harvey.

_____
FRANK G. CLEMENT, JR., JUDGE